645 A.2d 320

**Mary FINN**

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1993.

Decided June 21, 1994.

Petition for Allowance of Appeal Granted Oct. 12, 1994.

Alan C. Ostrow, Asst. City Solicitor, for appellant.

Jonathan Wheeler, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, SMITH and FRIEDMAN, JJ.

COLINS, Judge.

The City of Philadelphia (Philadelphia) appeals from an April 5, 1993 order of the Court of Common Pleas of Philadelphia County (Common Pleas) which denied Philadelphia's post-verdict motions and entered judgment in favor of Mary Finn (Finn) in the amount of $203,500. We reverse.

Finn's complaint averred the following facts. On December 24, 1987, Finn was walking on a sidewalk which adjoined real property on Wood Street owned by Philadelphia. She was injured, when she slipped on grease which had accumulated on the sidewalk, lost her balance, fell, and landed on a two-foot-by-three-foot throw rug which covered a portion of the sidewalk. Finn stated that she did not see the grease or the rug before she fell on the sidewalk, because it was dark. The grease had accumulated because cars and trucks regularly parked on the sidewalk and leaked oil. Finn also alleged that the presence of the rug demonstrated that Philadelphia had notice of a dangerous condition on its sidewalk and had tried unsuccessfully to cover the danger by putting the rug over some grease-covered areas of the sidewalk. Philadelphia denied liability for Finn's injuries and claimed that it did not have actual or constructive notice of a dangerous condition of the sidewalk. Philadelphia also asserted that it is immune from suit under what is commonly referred to as the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. §§ 8541–8542.

The matter proceeded to a non-jury trial by stipulated facts. Philadelphia moved for summary judgment and agreed that if a finder of fact could find evidence of a defect "of" the sidewalk and find that Philadelphia had constructive notice of that defect, then it would admit liability, with damages fixed in the amount of $203,500. Common Pleas denied Philadelphia's motion for summary judgment. After the trial on the stipulated facts, Common Pleas ruled in favor of Finn, finding that Finn had presented sufficient evidence for a trier of fact to conclude both that the grease was a defect "of" the sidewalk and that Philadelphia had constructive notice of this defect. Philadelphia filed a motion for post-trial relief, but Common Pleas denied Philadelphia's motion and entered judgment in

favor of Finn for the $203,500 damage figure stipulated by the parties.[1] This appeal followed.

Our scope of review of Common Pleas' decision is limited to a determination of whether constitutional rights have been violated or whether Common Pleas abused its discretion or committed an error of law. *Kearney v. City of Philadelphia,* 150 Pa.Commonwealth Ct. 517, 616 A.2d 72 (1992), *petition for allowance of appeal denied,* 534 Pa. 643, 626 A.2d 1160 (1993). The only issue Philadelphia raises on appeal is whether Common Pleas committed an error of law when it held that the grease created a dangerous condition *of* the sidewalk.

The Act, at 42 Pa.C.S. § 8541, provides a general grant of immunity to all local agencies for damages caused by acts of the agency or its employees. The Act, at 42 Pa.C.S. § 8542 also sets out eight limited exceptions to governmental immunity. The exception relevant to the present matter is 42 Pa.C.S. § 8542(b)(7) (the sidewalk exception), which imposes liability on a local agency for "[a] dangerous condition *of* sidewalks within the rights-of-way owned by the local agency...." (Emphasis added.) The issue for this Court to decide is whether a buildup of oil and grease on a sidewalk can be considered a dangerous condition "of" the sidewalk.

The facts of the instant matter present a controversy which has been difficult for this Court to resolve in past cases involving the sidewalk exception. This controversy is whether the sidewalk exception should be strictly construed to exempt from immunity only those torts caused by a structural or integral defect of the sidewalk or whether the sidewalk exception also imposes liability for torts caused by the existence of foreign substances such as ice, snow, oil, or grease, which can become attached to the sidewalk to the degree that they are only removable by the application of some affirmative force. We intend to resolve this controversy definitively by our decision in the present matter. In order to do so, however, it

---

1. Common Pleas also wrote an opinion dated June 18, 1993 in support of its April 5, 1993 order.

will be helpful to first review our past decisions in this area of law.

Two cases decided by this Court in 1985, *Ambacher v. Penrose*, 92 Pa.Commonwealth Ct. 401, 499 A.2d 716 (1985) and *Ziccardi v. School District of Philadelphia*, 91 Pa.Commonwealth Ct. 595, 498 A.2d 452 (1985), established generally that the sidewalk exception permitted the imposition of liability on a municipality only for structural or integral defects of a sidewalk. In *Ziccardi*, a student was assaulted on a sidewalk adjoining a school district's property, and the student's parents filed suit against the school district. We refused to impose liability on the school district because the student's injury was not caused by a defect in the sidewalk itself. In *Ambacher*, a pedestrian who had tripped over a wire fence which had fallen onto a sidewalk filed suit against Philadelphia, alleging that her injury was caused by a defect of the sidewalk. We held in *Ambacher* that the sidewalk exception only permitted the imposition of liability for structural or integral defects of a sidewalk. We concluded that Philadelphia could not be held liable for Ambacher's injury, because it was caused by a defect "on" the sidewalk rather than "of" the sidewalk.

This strict construction of the sidewalk exception prevailed until our decision in *Giosa v. School District of Philadelphia*, 127 Pa.Commonwealth Ct. 537, 562 A.2d 411 (1989), *petition for allowance of appeal denied*, 525 Pa. 629, 578 A.2d 416 (1990). In *Giosa*, the plaintiff, Frank Giosa (Giosa), slipped on a sidewalk adjacent to the school district's property. Giosa sustained injuries in the fall and sued the school district alleging that his fall was caused by an unsafe accumulation of snow and ice on the sidewalk, which the school district had failed to clear. The school district, relying on *Ambacher* and *Ziccardi*, argued that it was immune from suit and that Giosa's injury did not fall within the sidewalk exception, because it was not caused by a defect in the structural integrity or design of the sidewalk.

In our decision in *Giosa*, we distinguished *Ambacher* and *Ziccardi* and concluded that the sidewalk exception was not

limited solely to design, construction or internal structural defects of sidewalks. Based on the common law "doctrine of hills and ridges,"[2] we surmised that ice and snow could become affixed to the sidewalk to the degree that they could not be detached from the surface without the application of affirmative force, and we concluded that if the ice and snow were affixed in that manner, the ice and snow could be characterized as a dangerous condition "of" the sidewalk. We held in *Giosa* that the failure to clear an accumulation of snow and ice from a sidewalk could result in a dangerous condition of the sidewalk, for which liability could be imposed pursuant to the sidewalk exception.

*Giosa* was the first case that espoused these two new concepts: First, that the sidewalk exception was not limited solely to design, construction or internal defects of a sidewalk; and second, that a foreign substance could become so affixed to the surface of a sidewalk that it could become characterized as a defect of that sidewalk. However, since *Giosa*, these two concepts have been applied unevenly by this Court, resulting in conflicting precedents. This conflict is evidenced by the differences in recent rulings of this Court in *Fitchett v. Southeastern Pennsylvania Transportation Authority*, 152 Pa.Commonwealth Ct. 18, 619 A.2d 805 (1992), and *Shubert v. Southeastern Pennsylvania Transportation Authority*, 155 Pa.Commonwealth Ct. 129, 625 A.2d 102 (1993). These two cases are very similar factually, but we reached substantially different results in them.

In *Fitchett*, the plaintiff, Ruby Fitchett (Fitchett), alleged that she slipped on an accumulation of grease and debris on a subway concourse located on the Southeastern Pennsylvania Transportation Authority's (SEPTA) property. Fitchett sustained injuries in the fall and brought an action against SEPTA claiming that SEPTA was liable for her injuries pursuant to Section 8522(b)(4) of the Judicial Code, 42 Pa.C.S.

2. For a full discussion of the doctrine of hills and ridges, see *Giosa* or *Wentz v. Pennswood Apartments*, 359 Pa.Superior Ct. 1, 518 A.2d 314 (1986), *petition for allowance of appeal denied*, 515 Pa. 585, 527 A.2d 545 (1987).

§ 8522(b)(4)[3] (the real estate exception), which is commonly known as the real estate exception to the sovereign immunity granted to the Commonwealth and its agencies. Common Pleas granted SEPTA's motion for summary judgment and dismissed Fitchett's action. Fitchett then appealed to this Court.

On appeal, we affirmed Common Pleas' decision without making any reference to *Giosa*'s applicability. Instead, we relied upon our Supreme Court's decision in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), in which the Supreme Court construed the real estate exception to sovereign immunity. *Snyder* clearly stated that the critical word in the real estate exception language is "of" in the phrase "[a] dangerous condition of Commonwealth agency real estate." The Supreme Court also stated in *Snyder* that "[t]hese key words indicate that a dangerous condition must *derive, originate from or have as its source the Commonwealth realty.*" *Id.* at 433, 562 A.2d at 311 (emphasis added). Based on *Snyder*, we concluded in *Fitchett* that since the accumulation of grease and debris could not be said to be a defect of the land itself, SEPTA was not liable for Fitchett's injuries. We also stated that Fitchett's claim essentially amounted to a claim against SEPTA for a negligent failure to remove the grease and debris and ruled that such a failure does not fall within one of the exceptions to sovereign immunity set out in 42 Pa.C.S. § 8522(b).

*Shubert* was decided only six months after *Fitchett* but reached a different result. In *Shubert*, the plaintiff, Eleanor Shubert (Shubert), alleged that she slipped on an oily, wet surface on a subway platform located on SEPTA's property. Shubert sustained injuries in the fall and brought an action

3. 42 Pa.C.S. § 8522(b)(4) provides:

(b) **Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property. . . .

against SEPTA claiming that SEPTA was liable for her injuries pursuant to the real estate exception to SEPTA's sovereign immunity. Common Pleas rejected Shubert's claim and granted summary judgment in favor of SEPTA, because the court concluded that pursuant to *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987),[4] Shubert's claim did not fall within the real estate exception, because the oily spot was not a physical defect emanating from the sidewalk. Shubert then appealed to this Court.

On appeal, we reversed Common Pleas' decision and held that Shubert's complaint presented a question of fact as to whether the oily spot was affixed to the subway platform so as to become a dangerous condition of the platform. We reached this decision by concluding that although *Giosa* dealt with an exception to governmental immunity, *Giosa* was still applicable to *Shubert*, which involved the real estate exception to sovereign immunity, because our Supreme Court had utilized the same criteria to analyze both exceptions to immunity in *Snyder*. Common Pleas' grant of summary judgment was reversed and Shubert's action was permitted to proceed to trial.

In the present matter, the parties agree that the conflict between the *Fitchett* and *Shubert* decisions has created two distinct lines of cases. However, the parties disagree as to which line of cases should apply to the present matter. Finn contends that *Giosa* and *Shubert* are applicable in the present matter and that Common Pleas acted properly in following these precedents and denying Philadelphia's motion for summary judgment. Conversely, Philadelphia takes the position that *Giosa* and *Shubert* were wrongly decided and that the present matter should be controlled both by our Supreme Court's decision in *Snyder* and this Court's decision in *Fitchett*. After carefully considering the arguments presented by

---

4. *Mascaro* involved the negligent maintenance of a youth detention center which allegedly allowed two juveniles to escape and assault the Mascaro family. Our Supreme Court held that the youth center could not be held liable, because the real estate exception to sovereign immunity only applied in cases where an artificial condition or a defect of the land itself caused the injury.

both parties and reviewing the language of the sidewalk exception, we must agree with Philadelphia's position.

*Giosa* and *Shubert* are problematic decisions, because they essentially impose liability on government entities for a negligent failure to remove a foreign substance from either a sidewalk or real property owned by the government entity. We believe that the language of both the sidewalk exception to governmental immunity and the real estate exception to sovereign immunity indicates that the General Assembly did not intend to impose liability in instances where an injury is caused solely by the presence of a foreign substance on top of the sidewalk or the real property. Moreover, both *Giosa* and *Shubert* conflict with our Supreme Court's decisions in *Snyder* and *Mascaro,* which state that the dangerous condition must derive, originate from or have as its source the real estate. Accordingly, *Giosa* and *Shubert* are expressly overruled by our decision in the instant matter.

 Presently, we hold that in cases involving the sidewalk exception to governmental immunity, liability can be imposed on the government entity only if the plaintiff's injury is caused by a defect or a dangerous condition which originates from the sidewalk itself. Such a defect or dangerous condition is limited solely to the negligent design or construction of the sidewalk or to a defect in the internal structural integrity of the sidewalk. Similarly, in cases involving the real estate exception to sovereign immunity, liability can be imposed on the government entity only if the plaintiff's injury is caused by a defect of the real estate itself. We emphasize, however, that the substance or thing which causes the injury need not emanate from the real estate itself. Liability may be imposed on a government entity in instances where the defective design, construction or condition of the real estate itself results in an unnatural accumulation of a substance or thing which itself creates the hazardous condition leading to the injury.

 This Court will no longer impose liability pursuant to either the sidewalk exception to governmental immunity or

the real estate exception to sovereign immunity in cases where the plaintiff's injury is not caused by a defect in the sidewalk or the real estate itself. We will not impose liability for injuries caused by a negligent failure of the government entity to remove a foreign substance from the real estate or the sidewalk. Since ice, snow, oil and grease are all foreign substances which can naturally accumulate on the sidewalk or real estate itself, government entities are not liable for injuries caused solely by the presence of these substances on a sidewalk or on real property.

■ However, we will permit the imposition of liability if there is an allegation and proof that the substance on the sidewalk or other real estate was caused to be on the real estate because of an improper design, construction, deterioration, or inherent defect of the real estate itself. In those cases, the dangerous condition emanates from the real estate itself. Under such circumstances, a jury could find that the dangerous condition derived or originated from and had as its source the realty. This interpretation of the sidewalk and real estate exceptions is consistent with our Supreme Court's mandate in *Snyder* and *Mascaro*, that all exceptions to governmental immunity must be narrowly interpreted given the express legislative intent to insulate political subdivisions from tort liability.[5]

As applied to the present matter, this interpretation of the sidewalk exception precludes Finn from establishing liability against Philadelphia. Although Common Pleas found Finn's factual allegations to be true, these facts, as a matter of law, do not support a verdict which imposes liability on Philadelphia. Finn did not allege or prove that the accumulation of grease on the sidewalk was caused by an improper design, construction, deterioration or inherent defect in the sidewalk. Instead, Finn's complaint clearly establishes that the accumu-

5. We note that we must concur with the dissent in its statement that the actual holding in *Snyder* still left the meaning of a dangerous condition open for resolution, and we trust that the Supreme Court will resolve any apparent inconsistencies between the holdings in *Snyder, Mascaro,* and *Bendas.*

lation of grease on the sidewalk was deposited by cars and trucks which were previously parked there. We conclude that Common Pleas committed an error of law when it found that the grease was a dangerous condition of the sidewalk and held Philadelphia liable for Finn's injuries.

Accordingly, Common Pleas' decision is reversed.

## ORDER

AND NOW, this 21st day of June, 1994, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed.

CRAIG, President Judge dissenting.

Although there certainly is a need for this court to resolve our conflicting approaches to the sidewalk exception to governmental immunity, 42 Pa.C.S. § 8542(b)(7), our analysis of the statute is led astray if we focus upon a deemed difference between prepositions, by emphasizing "of" the sidewalk—as used in the statute—in contrast to the alternative preposition, "on" the sidewalk.

The heart of this exception to immunity is its focus upon a "dangerous *condition* of sidewalks." The preposition used— "of" instead of "on"—does not warrant confining the concept of "condition" solely to "design, construction or internal defects," as the majority opinion would now do. Among the wide range of concepts embraced by the dictionary definition of "condition," the pertinent one here is:

3 ... b: A state of affairs that hampers or impedes or requires correction <delayed by the ~ of the road> ....

4 a: A state of being

Webster's New Collegiate Dictionary 235 (1977).

If a particular portion of sidewalk provides good footing when dry and clean, but would cause a pedestrian to fall by virtue of its slippery surface when it is covered by grease, common parlance correctly would describe the condition of the sidewalk as having changed.

The majority opinion here wisely avoids fixing solely upon structure and design per se, by stating that there can be liability if there is proof "that the substance on the sidewalk or other real estate was caused to be on the real estate because of an improper design, construction, deterioration or inherent defect of the real estate itself."

One example of that sensible qualification would be a sidewalk slab constructed with perfect integrity and regularity, but without the slightly sloping surface plane which the expert artisan introduces to make sure that rainwater drains off the surface and does not accumulate there to produce a hazardous puddle or ice. Governmental liability could then apply if a plaintiff were able to surmount the daunting challenge of proving that the local agency had notice of the injury-inducing design defect—the absolute horizontal level of the construction.

However, if the foregoing illustration can fairly be considered to be within the sound qualification expressed in the majority opinion, it suggests the difficulty of making a workable distinction between (1) the slippery condition *of* a sidewalk (design as a contributing cause to a hazardous surface) versus (2) a slippery condition *on* the sidewalk (a slippery condition, whatever its origin, which remains hazardous because not corrected after notice).

To distinguish between the sidewalk's structure in contrast to substances adhering to it, and particularly to distinguish between substances adhering to a sidewalk because of its design in contrast to adherent substances having no design origin, is certain to involve us—as illustrated by review of our decisions to date—in making esoteric distinctions of a kind unsuitable for adjudication.

The practical key is the undoubted requirement that the plaintiff must prove that the local agency had *notice* of the dangerous condition of the sidewalk, regardless of the origin of the accretion involved. If a municipal administrator is shown to have had knowledge that a piece of municipal property presents an actual danger to the public, surely the

legislature did not intend that the danger could be ignored simply on the theory that it did not emanate from the sidewalk's structure or design.

The Supreme Court's decision in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), contains no holding which would bar us from recognizing "dangerous condition" in its everyday sense. Although the *Snyder* opinion did state that "of" is the critical word in the analogous sovereign immunity real estate exception, 42 Pa.C.S. § 8522(b)(4), and that these "key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty," *Snyder* at 433, 562 A.2d at 311, the facts of *Snyder* justify a conclusion that those words were merely emphasizing that the condition causing the injury was entirely detached and removed from the Commonwealth real estate itself. As the *Snyder* opinion noted with respect to the facts:

> Thus, liability is not predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property.... While this theory appears attractive, it is not supported by any exception to our immunity statute.
>
> It is uncontroverted that the strip mine highwall, at the points where the appellees fell, was some distance from the edge of PennDOT's right-of-way.... Accordingly, we conclude that Section 8522(b)(4) is inapplicable to this cause of action.

522 Pa. at 435, 562 A.2d at 312–13. Hence, in terms of the actual holding in *Snyder,* the meaning of a dangerous condition is still open for resolution, provided that, as here, the dangerous condition is one which is either of or on the public property, and *not* removed at a distance from it, as it was in *Snyder.*

In *Bendas v. Township of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992), our Supreme Court, in applying the "dangerous condition of ... real estate and sidewalks" language of 42 Pa.C.S. § 8522(b)(4), emphasized "dangerous condition" rather than the word "of," concluding that a jury may find that the

absence of traffic control devices at an intersection could constitute a "dangerous condition" of real estate for which the Commonwealth could be liable. 531 Pa. at 185, 611 A.2d at 1186. This holding, along with the holding in *Snyder* (which was cited in *Bendas* ), indicates that the ultimate judicial focus, in construing the immunity exception, well may rest upon the condition in which the public property exists as a matter of fact, without an added requirement that such condition must have emanated from that property.

The trial court was correct in concluding that a slippery, greasy sidewalk surface was a dangerous condition of the sidewalk, and that decision should be affirmed.