Linda S. KAISER, Insurance Commissioner of the Commonwealth of Pennsylvania as Statutory Liquidator of National American Life Insurance Company of Pennsylvania (In Liquidation), Plaintiff,

v.

WESTERN STATES ADMINISTRATORS, Defendant.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1997.

Decided Nov. 18, 1997.

Deborah F. Cohen, Philadelphia, for plaintiff.

Andrew H. Foulkrod, Harrisburg, for defendant.

Before KELLEY and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

This matter concerns a motion for judgment on the pleadings in this court's original jurisdiction. On August 28, 1996, Linda Kaiser, Insurance Commissioner for the Commonwealth, as statutory liquidator (Liquidator) of National American Life Insurance Company of Pennsylvania (NALICO), filed a Complaint against Western States Administrators (WSA) alleging breach of contract arising out of WSA's nonpayment of two Notes executed by WSA and NALICO in 1988. On April 14, 1997, after the close of the pleadings, the Liquidator filed this motion for judgment on the pleadings.

In October 1986 WSA, through its subsidiary, Western Sierra Life Insurance Company, purchased NALICO to increase its ability to do business in states like Pennsylvania where WSA was not licensed to underwrite insurance coverage. WSA borrowed the funds used to purchase NALICO from the Bank of America (Bank). On January 23, 1988, WSA and NALICO executed a note (Note I) whereby WSA promised to pay the principal sum to NALICO plus interest at the rate of ten (10) percent per year. The terms of Note I provided that interest would begin to accrue on January 26, 1988; the accumulated interest for the first year would be added to the "inter-company account" but all interest thereafter would be paid monthly beginning February 1, 1989; all unpaid principal and all accrued but unpaid interest was due and payable six months after the final payment date of the purchase note to the Bank; the final payment date of the purchase note to the Bank was on or before December 31, 1994; and in the event of default, WSA agreed to pay all costs, expenses and attorneys fees incurred by NALICO in connection with the enforcement of Note I. WSA failed to make payment under the terms of Note I.

On June 28, 1988, WSA and NALICO executed Note II wherein WSA promised to pay NALICO the principal amount of $1,500,-000.00 plus interest accruing from January 1, 1988 at the rate of ten (10) percent per year. Note II contained a proviso that the principal and the unpaid accrued interest, associated with Note I as part of a rescission agreement, became part of and was to be included in Note II and was due and payable at the earliest on July 31, 1994 but not later than December 31, 1994. WSA was to pay all expenses incurred in the enforcement of

Note II which contained other provisions identical to Note I. WSA failed to make payment of all outstanding sums due under Note II.

By order dated May 24, 1996, Liquidator was appointed by this Court. Under her power to institute suits on behalf of NALICO and to collect debts owed to NALICO, the Liquidator instituted this suit by filing a complaint against WSA in this Court. The two Notes were attached as exhibits and made a part thereof. The Liquidator alleges that WSA failed to make payment according to the terms of Notes I and II by the due dates. Liquidator further alleges that, on May 18, 1995, NALICO made formal demand for payment of the aggregate amounts due under Notes I and II and that a copy of the demand letter was attached as Exhibit C. Liquidator finally alleges that NALICO has fully complied with its obligations and that WSA breached its obligations under Notes I and II by failing to make payments thereunder when due and, as a result, NALICO has sustained damages.

WSA filed an original Answer and New Matter admitting that both Note I and Note II were executed, that WSA failed to make payment in accordance with the terms of the Notes and, in paragraphs 21, 23, and 28, admitted that NALICO complied with its contractual obligations under the Notes but, in paragraph 21, WSA also incorporated its entire New Matter. In its New Matter, WSA asserted affirmative defenses of estoppel, collateral estoppel, and that the Liquidator and the Pennsylvania Insurance Department (Department) caused the default through alleged tortious interference with a business relationship from 1990 until NALICO went into dissolution.

Specifically, WSA's original New Matter alleged several acts by the Department which WSA construed as tortious interference with its business relationship with NALICO and which allegedly caused WSA to default on the Notes. WSA alleged that the Department filed a petition for an Order of Suspension of NALICO with the Liquidator on January 9, 1991 because the Department refused to treat the notes as assets which contributed to the alleged financial instability of NALICO. The Securities Valuation Office, however, recommended to the Department that WSA's notes to NALICO should be treated as bonds and, therefore, assets. WSA therefore alleged further that the Department's continued arbitrary and capricious targeting of NALICO caused it to agree to stipulate to a Supervisory Order, when none was warranted, on the grounds that WSA was committing excess employees and financial resources to combatting the Department. The Supervisory Order was vacated after approximately nine months. WSA averred that it defaulted on the payments of Notes I and II to NALICO because NALICO's reputation was damaged by its voluntary stipulation for an Order of Suspension. WSA also averred the following: that NALICO's damaged reputation caused WSA to suffer a reduction in revenues from NALICO, which WSA had been using to reduce its outstanding loan obligation to Bank of America from $8.5 million to $2.9 million; losses of premiums, which WSA shared with NALICO; and that the defaults and losses stemmed from tortious conduct by the Liquidator and the Department, under the guise of regulatory concern on NALICO's behalf.

The Liquidator filed seven preliminary objections to WSA's original Answer and New Matter. Five of these seven objections were in the nature of a demurrer to WSA's New Matter, which asserted the following affirmative defenses: that the conduct of the Department was the proximate cause of WSA's default and that such conduct cemented the insolvency of NALICO, estoppel, collateral estoppel, and tortious interferences with WSA's business relationship with NALICO. The demurrer was based on the averments asserting that the Commonwealth Court will not examine the correctness of the Liquidator's regulatory actions prior to liquidation when raised by a defendant as part of new matter or as an affirmative defense. WSA then filed an amended Answer and New Matter and added a counterclaim for recoupment of expenses, costs and back profits. In its amended Answer, WSA again admitted that Notes I and II were executed and that WSA failed to make payments under the terms of those Notes. WSA, however, denied para-

graph 21 of the Complaint and asserted that, as a result of the tortious conduct previously averred in the original Answer, NALICO failed to comply with all of its obligations. Paragraphs 23 and 28 of the original New Matter which merely stated "Admitted" in response to corresponding paragraphs of the Complaint which alleged that NALICO had "complied with all obligations under the Notes" were changed in the amended New Matter to "Denied" followed by a statement of NALICO's alleged tortious behavior.

 The Liquidator responded by filing a reply to WSA's amended Answer which closed the pleadings. On April 14, 1997, the Liquidator filed a motion for judgment on the pleadings which is the matter presently before us.[1]

The parties in this case raise the following issues: (1) whether the averments in WSA's amended Answer are irreconcilable with the admissions that WSA made in its original Answer, and if so, whether these inconsistencies are without explanation; and (2) whether the Liquidator's averments that NALICO fully complied with its obligations under Notes I and II in paragraphs 21, 23, and 28 of her Complaint are legal conclusions that may not be deemed admitted for purposes of granting a judgment on the pleadings.

## I.

In support of her motion, the Liquidator argues that she is entitled to judgment on the pleadings because WSA admitted in its original Answer that Notes I and II were executed, that WSA failed to make payment under the terms of those Notes and NALICO performed all its obligations under the Notes. The Liquidator maintains that, because these are the only facts that she is required to prove to meet her burden of proof under the applicable substantive law and because WSA has already admitted to them, she is entitled to judgment on the pleadings. Additionally, the Liquidator con-

tends that WSA admitted in its amended Answer that the Notes were executed and that WSA failed to make the required payments, but, this time, WSA denied that NALICO met its obligations. The Liquidator maintains that, although WSA's amended Answer contradicts its original Answer by denying that NALICO complied with its obligations under the Notes, under Pennsylvania law, that contradiction and denial is void, and the fact is deemed admitted according to the original Answer.

 Notes I and II provide that California substantive law will govern any dispute arising under the Notes. As the forum state, however, Pennsylvania procedural rules will govern. *See Smith v. Commonwealth National Bank,* 384 Pa.Superior Ct. 65, 69, 557 A.2d 775, 777 (1989) (applying Pennsylvania rule for summary judgment to an escrow agreement containing language that the agreement was governed by the laws of the state of New York). Therefore, Pennsylvania law will govern whether granting the Liquidator's motion for judgment on the pleadings is appropriate, and California law will govern the substantive rights and obligations of the parties under the Notes and determine whether WSA breached or whether its breach was excused.

 Rules governing pleadings are procedural and, therefore, Pennsylvania law applies to the form and content of the pleadings. In *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989), our Supreme Court stated that admissions contained in a party's pleading constitute judicial admissions and cannot be contradicted at a later time by the party who has made them regardless of the method by which he seeks to contradict his prior admission. *Id.* at 506, 555 A.2d at 69. These admissions are conclusive. *Id.*

In *Avondale Cut Rate, Inc. v. Associated Excess Underwriters, Inc.,* 406 Pa. 493, 178 A.2d 758 (1962), however, Associated filed an answer to Avondale's complaint which admit-

---

1. A motion for judgment on the pleadings in the Commonwealth Court's original jurisdiction is in the nature of a demurrer. All of the opposing party's allegations of fact are viewed as true, and only those allegations specifically admitted may be considered against that party. Such a motion will be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Pennsylvania State Association of Township Supervisors v. Department of General Services,* 666 A.2d 1153 (Pa.Cmwlth.1995).

ted certain facts. After preliminary objections, Associated filed an amended answer contradicting the admissions in the original answer.

■ The *Avondale Court* held that an amended answer must not contradict the averments in the original answer unless there is an explanation. *Id.* at 500, 178 A.2d at 762. The holding in *Avondale,* upon which both the Liquidator and WSA rely, permits inconsistencies between pleadings if the party can explain its contradicting averments.

■ In the case *sub judice,* WSA's amended Answer is seemingly inconsistent with its original Answer. However, WSA offers a reasonable explanation which attempts to establish that there is no inconsistency and, alternatively, if there is such an inconsistency, WSA has explained why its pleadings were inconsistent, which is what the *Avondale* Court required to avoid judgment on the pleadings. In its original Answer, WSA admits that NALICO complied with its contractual obligations under the Notes in the Answer portion of its pleading but also incorporates the entire New Matter into its admission. WSA's original New Matter asserted that Department's conduct, was tortious. The allegations of tortious conduct of the Department in WSA's original New Matter were not dependent on whether NALICO performed its contractual obligations under the Notes.

In its amended Answer, however, WSA incorporated that part of its original New Matter alleging tortious interference, into its paragraph 21, which now denied NALICO's compliance with all of its obligations under the Notes on the grounds that NALICO owed WSA an implied duty of good faith and fair dealing under the Notes. The significant difference between the two Answers, however, is that instead of alleging tortious conduct on the part of the *Department* as an affirmative defense, WSA averred that *NALICO* behaved tortiously as part of its amended Answer. As a result, WSA's amended position was that NALICO did not comply with all of its non-contractual obligations under the Notes, which include good faith and fair dealing, because it behaved tortiously even if NALICO technically complied with its con-

tractual duties to which WSA specifically limited its admission in its original Answer. Therefore, because WSA has offered a feasible explanation for its seemingly inconsistent pleadings, WSA should not be held to its prior admission, pursuant to *Avondale.*

■ California law, which governs the substantive rights of the parties, entitles a party to recover under a note where the party shows (1) the existence of the note, (2) the terms of the note establishing the obligation at issue, (3) the occurrence of any conditions precedent to the enforcement of the obligation at issue, (4) the breach of that obligation, and (5) that there are no defenses available to the non-paying party or where the non-paying party does not prevail on those defenses. *FPI Development v. Nakashima,* 231 Cal.App.3d 367, 282 Cal.Rptr. 508, 515–17 (1991). Although the Liquidator argues that WSA admits to the existence and execution of the Notes and that it breached the terms of those Notes by failing to make payment, WSA is entitled to deny, under *Avondale,* and has in fact denied, that NALICO met its non-contractual obligations because NALICO tortiously interfered with WSA's performance. In this regard, viewing WSA's allegations as true, there will be material facts at issue to establish the propriety of WSA's defense of tortious interference which is permitted by the fifth element of *FPI Development. Id.* The Liquidator is not, therefore entitled to judgment on the pleadings as a matter of law.

## II.

In its brief in response to the Liquidator's motion for judgment on the pleadings, WSA argues, in the alternative, that even if this court decides that WSA admitted that NALICO complied with its obligations under the Notes, whether NALICO complied with its contractual obligations is a legal conclusion. Because legal conclusions can only be decided and determined by the court, WSA cannot be deemed to have admitted to a legal conclusion for purposes of granting a motion for judgment on the pleadings.

A legal conclusion is a statement of a legal duty without stating the facts from which the duty arises. Black's Law Dictionary 893 (6th ed.1991). A statement of the existence of a fact could be a legal conclusion if the fact stated is one of the ultimate issues in the proceeding. *Id.* Additionally, "conclusions of law have no place in a pleading." *Price v. Ross,* 339 Pa.Superior Ct. 461, 463, 489 A.2d 252, 253 (1985). Here WSA's contractual obligation in the Notes to make payments is not contingent upon nor does it provide for any duty for NALICO to perform to be entitled to payment. The allegation that "NALICO complied with its obligations under the Notes" is a legal conclusion, but it is also mere surplusage.

The Complaint sets forth the terms and then in paragraphs 12, 17 and 20, clearly sets forth the factual allegation that WSA failed to make payment under the Notes when due and paragraphs 25 and 30 clearly allege NALICO suffered damages. WSA admits failing to make payment but denies being responsible for the damages which WSA claims were caused by the conduct of the Department, which was averred in the original Complaint, and then by the conduct of NALICO, which was included in the amended Complaint. The only legitimate issue is not whether the content of the allegation of NALICO's contractual duties under the Notes being complied with is a fact or a conclusion, but whether NALICO had any duties of good faith and fair dealing with WSA as a result of the Notes and whether such duties, if any, were complied with.

The determination of whether or not the duty of good faith and fair dealing exists is made by the motion for judgment on the pleadings which, at this stage, is treated like a demurrer. The averments of the New Matter, that NALICO's voluntarily entering into a stipulation consenting to the Order of Supervision when NALICO knew or should have known that was improper and whether or not such conduct amounted to good faith and fair dealing were a breach of duty to WSA, are allegations of material fact which have remained not admitted in the pleadings and thereby prevent the granting of a motion for judgment on the pleadings.

Therefore, in the absence of an admission to those missing facts, the Liquidator's motion for judgment on the pleadings must be denied because these facts, which are missing from the Complaint, are material facts that are still in dispute.

### ORDER

AND NOW, this 18th day of November, 1997, the Motion for Judgment on the Pleadings, filed on April 14, 1997 by Linda S. Kaiser, Insurance Commissioner of the Commonwealth of Pennsylvania as statutory liquidator of National American Life Insurance Company of Pennsylvania, is hereby denied.