Mary Ann SNYDER and Robert Snyder, her husband, Appellees,

v.

NORTH ALLEGHENY SCHOOL DISTRICT, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1998.
Decided Dec. 24, 1998.

---

Kathryn L. Simpson, Pittsburgh, for appellant.

William F. Goodrich, Pittsburgh, for appellee.

Before PELLEGRINI, J., KELLEY, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

North Allegheny School District (School District) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) denying its post-trial motion for judgment *non obstante veredicto* (judgment *n.o.v.*) and entering judgment in favor of Mary Ann Snyder (Plaintiff) for injuries sustained as a result of a fall on the School District's property.

On March 18, 1993, Plaintiff was leaving from an evening activity of the North Star Kids organization at the Espe School when she slipped and fell after stepping onto a snow and ice covered concrete landing at the top of a set of stairs adjacent to the driveway in front of the school building. As a result of her fall, Plaintiff suffered a "Colles" fracture to the radius and styloid tip of the ulna in her right hand and wrist. Plaintiff and her husband, Robert Snyder, filed a civil action

against the School District seeking damages for the injuries she sustained as a result of the accident and contending that the School District was negligent in failing to, *inter alia*, provide adequate lighting for the parking lot and its adjacent areas, remove the ice and snow from the concrete landing, and provide warning signs notifying individuals of the dangerous conditions existing on the concrete landing. Robert Snyder asserted a claim for loss of consortium as a result of Plaintiff's injuries. In the new matter of its answer, the School District asserted, *inter alia*, that it was immune from suit and that Plaintiff's injuries did not fall within any exception contained within the "Political Subdivisions Tort Claims Act" (Tort Immunity Act).[1] The case proceeded to a jury trial.

At trial, Plaintiff testified [2] that when she arrived at the Espe School on the day of her injury, she recalled that there was "trampled snow" on the concrete landing. She stated that when she left the Espe School that evening, she walked down the path that ended approximately where the stairs leading to the parking lot were located, and that the light at the bottom of the stairs leading to the parking lot was not illuminated. Plaintiff testified that when she crossed the driveway to travel down the stairs leading to the parking lot, she could not see the top surface of the concrete slab that formed the landing and, as a result, she slipped and fell causing injury to her right hand and wrist.

Regarding how she actually fell, Plaintiff stated that "I stepped up [onto the concrete landing] with my right foot, took a step with my left foot. Then when I put my right foot down the second time was when I fell ... to my right side onto my right wrist." She indicated that she "landed definitely right on the ice or like – it would seem like a mound of something. Then I grabbed my wrist and rolled over; and ... I rolled onto my left side, and my face went into the snow." Plaintiff testified that the snow itself was hard and it appeared slippery. She stated that, normally, when she descended the stairs, she would use the railings, but when coming across the concrete landing, there was no railing to use for support.[3]

The School District presented the testimony of Robert Jones (Jones),[4] the night custodian at the Espe School in March 1993.[5] As to the conditions of the concrete landing on the day Plaintiff fell, Jones testified:

> [T]hat day there, the sidewalks were clear; but what was happening, it was just a lot of snow piled up; and what happened, it was a little sunny that day. It melted some of the snow; and then we got a snow storm. Some snow was blowing, you know that happened. Snow probably covered the ice there; and what happened, I never did get out there maybe to salt the sidewalk or whatever at that time ... I didn't [go out and check the landing] [b]ecause I thought maybe it was kind of clear out there, maybe safe to walk on.

1. Act of October 5, 1980, P.L 693, *as amended*, 42 Pa.C.S. §§8541 and 8542. Section 8541 of the Tort Immunity Act provides:

 Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

2. *Plaintiff also presented the testimony of the following witnesses: Alice MacLeod, accompanying pianist for the North Star Kids; Karen Lytowski, whose son had fallen on the same night as Plaintiff; Daniel Snyder, Plaintiff's son; George Morrissey, custodian of the Espe School; Joseph Bullick, supervisor of custodial services for the School District; Valerie Drwal, Plaintiff's daughter; and Glenn Buterbaugh, M.D., Plaintiff's treating physician, via videotape deposition.*

3. Plaintiff also testified regarding the nature of the injury to her right wrist, her subsequent course of surgical and rehabilitative treatment, and the effects of her injury upon her ability to engage in gainful employment and upon her lifestyle.

4. The School District also presented the testimony of the following witnesses: David J. McFarlane, an electrician for the School District; David Russ, former supervisor for American Building Maintenance; and Barbara Yankasky, Plaintiff's former treating occupational therapist, via telephone deposition.

5. Jones testified that in March 1993, he was employed by American Building Maintenance, a contract cleaning company that worked for the School District to clean various school buildings throughout the North Allegheny School District.

Regarding the light near the stairs leading to the parking lot, Jones explained that the light was on a timer connected to a circuit breaker switch located inside a gray box where the switch could be turned on. He testified that it was his job to check and make sure the light was on for the parking lot and the driveway if a group was going to be using the Espe School in the evening, and on the night Plaintiff fell, the light was on. Jones stated that the only time when the light would not be on was when there were no evening activities occurring at the Espe School; however, he admitted there had been times when he "might have been too busy [and] forgot there was a class or something ... [that] was supposed to be going on at the school" and he would have to manually turn the light on.

The jury returned a verdict in favor of Plaintiff and assessed damages at $400,000,[6] which the trial court molded for a total award of $275,237.55. Following entry of the verdict, the School District filed a post-trial motion for judgment n.o.v. contending that Plaintiff fell from a sidewalk and, as a result, it was immune from suit under Section 8542(b)(3)(iv) of the Tort Immunity Act. It also contended that it was immune from suit under Section 8542(b)(7) of the Tort Immunity Act because Plaintiff slipped and fell as a result of the ice and snow located "on" the sidewalk and not any dangerous condition "of" the sidewalk itself. In opposition to the School District's motion for judgment n.o.v., Plaintiff asserted that the area where she fell was part of the landing to the set of stairs and not a sidewalk. She also asserted that because the School District failed to maintain light in the area or to remove the ice and snow covering the landing, the School District was negligent in its care, custody and control of this real property within its possession, constituting an exception to governmental immunity under Section 8542(b)(3) of the Tort Immunity Act.

Denying the School District's post-trial motion for judgment n.o.v., the trial court concluded that the sidewalk exception of Section 8542(b)(7)[7] was not applicable to the case because "a sufficient amount of evidence existed on the record for the jury to classify the [concrete landing] as other than a sidewalk," making the School District's "on/of" distinction irrelevant. The trial court, however, found that Plaintiff's injuries fell within the real property exception contained in Section 8542(b)(3)[8] because they were the result of the School District's negligence in the care, custody and control of its real property. This appeal by the School District followed.[9]

6. The jury attributed 70% causal negligence to the School District and 30% causal negligence to Plaintiff. Considering insurance benefits paid to Plaintiff ($55,000) and the award of delay damages ($33,737.55), Plaintiff was awarded a total verdict of $275,237.55. Robert Snyder was not awarded any damages for his loss of consortium claim.

7. The sidewalk exception contained in Section 8542(b)(7) of the Tort Immunity Act provides:

 (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: ... (7) Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances if the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for dam-

ages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable. (Emphasis in original).

8. The real property exception contained in Section 8542(b)(3)(iv) of the Tort Immunity Act provides:

 (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: ... (3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. (Emphasis in original).

9. Our scope of review of an order denying judgment n.o.v. is limited to a determination of whether the trial court abused its discretion or

## I.

The School District contends that the trial court erred in denying its motion for judgment *n.o.v.* by not finding it was entitled to immunity under the sidewalk exception to governmental immunity contained in Section 8542(b)(7) of the Tort Immunity Act. If the trial court applied the sidewalk exception, it contends that because the Plaintiff fell as a result of the snow and ice being "on" the sidewalk and not any defective condition "of" the sidewalk, then Plaintiff's injuries did not fall within the exception and it remains immune from suit. However, in no way can a concrete slab that represented the top landing to a set of stairs leading to the parking lot of the Espe School be considered a sidewalk.

 In this case, the concrete landing was not adjacent to a public right-of-way,[10] but to a driveway owned by the School District and used by parties with express or implied permission from the School District. *See, e.g.,* Section 102 of the Vehicle Code, 75 Pa.C.S. §102 (relating to definition of "driveway"). For the concrete landing to fall within the sidewalk exception contained in Section 8542(b)(7) of the Tort Immunity Act, a condition precedent for that exception to apply is that it is the dedicated portion of a public right-of-way used for pedestrian traffic. In this case, the concrete landing was not in a public right-of-way but adjacent to the school driveway, and where Plaintiff fell was the top landing to a set of stairs leading to the parking lot of the Espe School, with grass on either side, and only served as the landing when ascending or descending the parking lot stairs. Because Plaintiff fell on a concrete slab representing the top landing to a set of stairs leading from the Espe School parking lot, the trial court properly found that it was not part of a sidewalk and that the sidewalk exception did not apply.

## II.

### A.

While not agreeing that the Plaintiff has made out a case for negligence that falls within the real property exception, the School District additionally contends that the trial court should be reversed because it is not clear on what basis the jury imputed negligence to it, i.e., because of the ice and snow on the landing or because of inadequate lighting.[11] It asserts that the trial court

committed an error of law necessary to the outcome of the case. *Krevitz v. City of Philadelphia,* 167 Pa.Cmwlth. 412, 648 A.2d 353 (Pa.Cmwlth. 1994). As a part of this Court's review, we must determine whether the School District is entitled to judgment *n.o.v.* as a matter of law and consider "the evidence and any conflicts ... in the light most favorable to [Plaintiff] as the verdict winner who is afforded the benefit of all reasonable factual inferences that arise from the evidence." *Marker v. Commonwealth, Department of Transportation,* 677 A.2d 345 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 546 Pa. 671, 685 A.2d 549 (1996). Granting judgment *n.o.v.* is warranted only where it is clear that the facts are such that no two reasonable individuals could fail to agree that the trial verdict was correct. *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003 (1992).

10. A sidewalk is "[t]hat portion of a street between the curb lines, or the lateral lines of roadway, and the adjacent property lines, intended for the use by pedestrians." Section 102 of the Vehicle Code, 75 Pa.C.S. §102.

11. The School District also raises several other errors that the trial court made that justifies vacating its decision. It contends that the trial court erred by not allowing it to read paragraph 5 of Plaintiff's complaint because it represented a prior inconsistent statement. It asserts that the trial court erred in mischaracterizing paragraph 5 of the complaint as a judicial admission. The School District alleges that in paragraph 5 of the complaint, Plaintiff stated that the concrete slab had "hills and ridges of ice and snow several inches in height," while testifying that concrete landing was covered with uneven snow. Contrary to the School District's contention, an admission in a party's pleading is a judicial admission that is conclusive. *Kaiser v. Western States Administrators,* 702 A.2d 609 (Pa.Cmwlth.1997). Moreover, the Plaintiff's failure to use the words "hills and ridges" while testifying at trial did not make her statement inconsistent with Paragraph 5 of the complaint. *Commonwealth v. Borelli,* 288 Pa.Super. 319, 431 A.2d 1067 (Pa. Superior Ct.1981). Furthermore, when the trial court notified the School District that the reading of Paragraph 5 at trial would represent a judicial admission, it voluntarily withdrew the request. Consequently, we find the School District's contention to be without merit.

The School District also contends that the trial court erred in overruling its objections to the testimony of Plaintiff's former occupational therapist, Barbara Yankasky, because she was per-

erred in failing to charge the jury with respect to Plaintiff's claim that it failed to provide adequate light near the concrete landing also causing her to fall and injure herself. The School District also contends that the special interrogatories should have been presented to the jury for it to specify whether it found the School District liable for failing to provide adequate lighting in the area near the concrete landing or failing to remove the ice and snow from the concrete landing, or both, in arriving at its verdict.[12]

■ However, the School District neither objected at trial to the jury interrogatories nor raised this issue in its post-trial motion.[13] If a party fails to object to a jury charge or the wording of a special interrogatory regarding a theory or theories of liability before the case goes to the jury for deliberations, the issue is waived on appeal. *Williams v. Southeastern Transportation Authority*, 133 Pa.Cmwlth. 55, 574 A.2d 1175 (Pa.Cmwlth.1990), *aff'd sub nom. City of Philadelphia Police Dept. v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993); *Commonwealth v. Herold*, 17 Pa.Cmwlth. 148, 330 A.2d 890 (Pa.Cmwlth.1975). Moreover, when a party does not raise the error in post-trial motions,

the issue is deemed waived. *Lane Enterprises, Inc. v. L.B. Foster Co.*, 551 Pa. 306, 710 A.2d 54 (1998). Because the School District failed to timely raise this issue before the interrogatories were submitted to the jury, it is deemed waived.

**B.**

■ Even if both theories of negligence were before the jury, "[w]hen a jury has been presented with several theories pleaded in the alternative, the verdict will be upheld on review if the evidence [is] sufficient to prove a valid cause [of action] under any of the theories." *Jedlicka v. Clemmer*, 450 Pa.Super. 647, 677 A.2d 1232, 1234 (Pa. Superior Ct.1996) (*citing Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 545 A.2d 926 (Pa. Superior Ct.1988)). Because the trial court charged the jury with regard to the School District failing to remove the ice and snow from the concrete landing, we will address that basis of liability first to determine whether there was sufficient evidence presented for Plaintiff's claim to fall within the real property exception holding the School District liable under the Tort Immunity Act.[14]

mitted to render a medical diagnosis of tendinitis. It asserts that this testimony was improper and confusing to the jury. In effect, the School District is arguing that Barbara Yankasky was not qualified as an expert witness to render such a diagnosis. However, any witness who has a reasonable pretension of the specific subject matter is qualified to render an opinion and the weight of the testimony will be decided by the finder of fact. *Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988). Although not a doctor, Barbara Yankasky was a licensed occupational therapist who testified that she had seen patients with the same or similar types of injuries as Plaintiff. She further testified that as an occupational therapist, she observed a lot of tendinitis, especially as a result of surgeries like that of Plaintiff. Because Barbara Yankasky had a reasonable pretension of the specific subject matter and was qualified to render an opinion, the trial court properly overruled the School District's objection to her testimony.

12. The School District further asserts that if the jury had been charged with respect to the light near the parking lot of the Espe School, the appropriate exception for the Plaintiff to pursue in order to impose liability upon the School District would have been Section 8542(b)(4) of the Tort Immunity Act, 42 Pa.C.S. §8542(b)(4)

(relating to trees, traffic controls and street lighting).

13. From our review of the record, we cannot find where the trial court charged that the School District could be held liable for failing to provide adequate light near the concrete landing. While it did not charge the jury on this issue, the trial court did address this claim in its opinion denying the School District's motion for judgment *n.o.v.* stating that:

In the present case, poor lighting of the area of the injury was alleged. Failure to provide sufficient lighting could impose liability for [the School District's] negligence in its care, custody and control of the landing (i.e., the real property in question). The Court is satisfied that the slip and fall injury sustained herein was a foreseeable risk of the poor lighting in that area.

14. Liability may be imposed upon a local agency under the Tort Immunity Act if two conditions are satisfied and if the injury occurs as a result of one of eight enumerated exceptions. The two conditions are (1) that the damages would otherwise be recoverable under common law or a statute creating a cause of action against one without the defense of governmental immunity

Section 8542(b)(3) of the Tort Immunity Act waives immunity where the local agency was negligent in the "care, custody or control of real property" in its possession. In *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), our Supreme Court interpreted the real property exception to impose liability only when the injury occurred as a result of a defect "of" the real property not "on" the real property. It stated:

Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may be reasonably foreseen to be used, are acts which make the local agency amenable to suit ... [T]he real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates that injury ... (Emphasis in original).

*Id.* at 362–63, 523 A.2d at 1124; *see also Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989) (same interpreting real property exception to sovereign immunity). *Mascaro* established a test that a local agency is only amenable to suit when the artificial conditions or defect is of the real property itself, and the focus of the inquiry is whether an actual defect of the real property caused the injury. *Snyder.* As a result, liability will not be imposed for injuries sustained as a result of a local agency's failure to remove a foreign substance from real property, including ice and/or snow. *DeLuca v. School District of Philadelphia*, 654 A.2d 29 (Pa. Cmwlth.1994) (*citing Finn v. City of Philadelphia*, 165 Pa.Cmwlth. 255, 645 A.2d 320, 325 (Pa.Cmwlth.1994), *aff'd*, 541 Pa. 596, 664 A.2d 1342 (1995)) (plaintiff injured by milk leaked from trash onto concrete pavement and not dangerous condition of pavement; liability precluded); *see also Walker v. Philadelphia Housing Authority*, 158 Pa.Cmwlth. 497, 631 A.2d 1117 (Pa.Cmwlth.1993) (greasy

substance on steps caused plaintiff's fall and not defective condition of steps; liability precluded); *Hicks v. Southeastern Pennsylvania Transportation Authority*, 154 Pa. Cmwlth. 641, 624 A.2d 690 (Pa.Cmwlth.1993) (trash on stairway caused plaintiff's fall and not defective condition of stairway; liability precluded); *Bowles v. Southeastern Pennsylvania Transportation Authority*, 135 Pa. Cmwlth. 534, 581 A.2d 700 (Pa.Cmwlth.1990) (snow on wooden platform caused plaintiff to fall and not defective condition of wooden platform; liability precluded).

Recently, however, our Supreme Court in *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997), held that because the real property exception contained the "care, custody or control" language rather than the "dangerous condition of"[15] language of most exceptions, a dangerous condition or defect when located "on" real property could fall within the real property exception contained in Section 8542(b)(3) of the Tort Immunity Act. In *Grieff*, a volunteer police chief poured paint thinner onto a fire station floor in order to clean it when the thinner ignited causing a visitor to the station to become engulfed in flames and injured. In holding the local agency liable for the visitor's injuries, our Supreme Court stated:

Grieff's care of the Fire Association's property caused the fire that injured Reisinger. While he was removing paint from the floor, therein caring for the real property, it ignited causing the resultant injuries to Reisinger. Under the real property exception's plain language, Grieff and the Fire Association are not immune from suit.

*Id.* at 16, 693 A.2d at 197. Our Supreme Court also concluded that *Grieff* was distinguishable from those cases that held that the real property exception did not apply because the real property only facilitated the injuries. It stated:

fall within the real property exception because under that exception, it would only be liable for a dangerous condition of the sidewalk and the "on/of" analysis would still apply. *See Finn v. City of Philadelphia*, 165 Pa.Cmwlth. 255, 645 A.2d 320, 325 (Pa.Cmwlth.1994), *aff'd*, 541 Pa. 596, 664 A.2d 1342 (1995).

and (2) that the injury is caused by the negligent act(s) of the local agency or its employees acting within the scope of their duties, excluding acts of crime, fraud and malice. *Kilgore v. City of Philadelphia*, 553 Pa. 22, 717 A.2d 514 (1998).

15. For example, if the sidewalk exception did apply, the School District's negligence would not

We intended *Mascaro* and its progeny to apply in similar cases where third parties cause the harm ... They were not intended to apply to a case like this ... Grieff's and the Fire Association's *negligent care of the property* caused Reisinger's injury. (Emphasis added).

*Id.* Moreover, in applying *Grieff* to other cases, we have held that the "on-of" analysis no longer applies to determine whether a local agency's negligence falls within the real property exception. *See, e.g., Hanna v. West Shore School District,* 717 A.2d 626, 629 (Pa. Cmwlth.1998) ("from the *Grieff* decision ... for government immunity purposes, it is no longer of any consequence that the injury does not result from a defect in, or condition of, the real property itself"); *Eger v. Lynch,* 714 A.2d 1149, 1153 (Pa.Cmwlth.1998) ("third party that caused Parkin's death ... [t]his is not a question of care, custody or control over the real property owned by the [local agency] as in *Grieff"*); *Abella v. City of Philadelphia,* 703 A.2d 547, 550 (Pa.Cmwlth. 1997) (*Grieff* "essentially held that a local agency could be liable under the real property exception to governmental immunity for a foreign substance on the property that makes the property dangerous"); *Martin by & through Martin v. City of Philadelphia,* 696 A.2d 909, 912 (Pa.Cmwlth.1997) ("[u]nder *Grieff,* local agency liability for negligence in the care, custody and control of real property does not require the instrumentality causing harm to be 'of' the real estate in the sense of being affixed to it.") Because the ice and snow were located on the concrete landing and, as a result of our decisions in *Hanna, Eger, Abella* and *Martin by Martin,* the School District's negligence in failing to remove the ice and snow from the concrete landing fell within the real property exception making it liable for Plaintiff's injuries.

Accordingly, the trial court properly denied the School District's post-trial motion for judgment *n.o.v.* and the order of the trial court is affirmed.[16]

### *ORDER*

AND NOW, this 24th day of December, 1998, the order of the Court of Common Pleas of Allegheny County at No. GD 95–2476, dated March 25, 1998, is affirmed.

Judge KELLEY concurs in the result only.

---

**16.** Because of the way we have resolved this case, we need not address whether the inade-

quate lighting falls within the real property exception to governmental immunity.