# Wilson v. Norristown Area School District

C.P. of Montgomery County, no. 94-09819.

*Richard W. Rogers,* for plaintiff.
*John M. Donahue,* for defendants.

ALBRIGHT, *J.,* July 30, 1999—

FACTS AND PROCEDURAL HISTORY

Plaintiffs initiated this action by complaint filed on August 25, 1994, alleging that Littissia Wilson, a minor, sustained serious injuries to her face, mouth, teeth, and chin, when she fell on an indoor staircase while participating in a drill during a field hockey practice on October 21, 1993. Defendant, John Meissner, an adult individual, was employed as a coach at the East Norriton Middle School and was supervising the aforementioned field hockey practice when Ms. Wilson was injured. Initially, the practice was held outside, but inclement weather necessitated that Meissner move the practice indoors. Inside the East Norriton Middle School gymnasium, the field hockey team first played a relay tag game. Thereafter, coach Meissner divided the girls into two teams and directed that they go to one of two wings of the building at which site staircases were located. The girls were instructed to participate in a tag race whereby they would start at the bottom of one set of stairs, climb a series of 13 steps, run through a hallway, down two steps, continue running along a wall, finally descending a second set of stairs to tag another girl waiting at the bottom. Ms. Wilson was descending the stairs on the last leg of the race when she lost her footing and stumbled down the remaining four to five stairs, falling to the floor and causing her to sustain the injuries complained of.

A jury trial was conducted before the undersigned on October 14 through 16, 1998, and, at the conclusion of

the plaintiffs' case in chief, the court granted a compulsory nonsuit against the plaintiffs and in favor of the defendants. The court, giving the plaintiffs the benefit of every reasonable inference and resolving all of the evidentiary facts in their favor, was constrained to find no liability on the part of the defendants, as the plaintiffs failed to demonstrate any theory of recovery within any of the enumerated exceptions to governmental immunity as set forth in the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq., specifically the real property exception, 42 Pa.C.S. §8542(b)(3), which might otherwise allow them to prevail against either the defendant Norristown Area School District or its agent and employee, John Meissner.

On October 26, 1998, the plaintiffs filed a motion for post-trial relief seeking the grant of a new trial. Following oral argument held on January 27, 1999 and February 26, 1999, and, upon consideration of the parties' memoranda of law, plaintiffs' motion was denied by this court by order dated February 26, 1999. In response, the plaintiffs filed a notice of appeal, and, pursuant to Pa.R.A.P. 1925(b) and this court's order dated April 1, 1999, filed a concise statement of matters complained of on appeal on April 12, 1999, in which the following issues have been raised verbatim:

"(1) The court erred as a matter of law in concluding that the defendants were entitled to judgment as a matter of law.

"(2) The court erred in finding and concluding that no liability exists as to the defendants under the facts and circumstances presented as a matter of law so as to warrant the entry of a nonsuit.

"(3) The court erred as a matter of law and/or abused its discretion in finding/concluding that the claim of the

plaintiff did not fall within the real property exception of the Political Subdivision Tort Claims Act; to wit 42 Pa.C.S. §§8542(a)(1), 8542(a)(2) and 8542(b)(3).

"(4) The court erred as a matter of law and/or abused its discretion in finding/concluding that the East Norriton Middle School facility was not under the care, custody and control of the defendant, Norristown Area School District and its employee John Meissner, during the field hockey practice session which gave rise to plaintiff's injury.

"(5) The court erred as a matter of law and/or abused its discretion in finding/concluding that the stairs and hallways of the East Norriton Middle School in which the field hockey session was conducted were not under the care, custody and control of the defendant, Norristown Area School District and/or coach Meissner as its employee, at the time of the field hockey practice session which gave rise to the plaintiff's injury.

"(6) The court erred as a matter of law and/or abused its discretion in finding/concluding that the stairs did not constitute an artificial condition or defect in the real property which caused the plaintiff's injury.

"(7) The court erred as a matter of law and/or abused its discretion in finding/concluding that coach Meissner's conduct in requiring the field hockey team members to engage in a tag relay race on the stairs of the East Norriton Middle School constituted the failure to supervise the conduct of students.

"(8) The court erred as a matter of law and/or abused its discretion in finding/concluding that the direction and use of the East Norriton Middle School stairs for the running of tag races by the field hockey team did not constitute a dangerous condition of the real estate for field

hockey team conditioning, despite the fact that it was a use of the stairs for a purpose for which the stairs were not intended.

"(9) The court erred as a matter of law and/or abused its discretion in finding/concluding that using the stairs for the running of tag relay races did not create a dangerous condition of the real property.

"(10) The court erred as a matter of law and/or abused its discretion in finding/concluding that a dangerous condition of the real property was not created when the stairs were directed to be used for the running of tag races by the field hockey team during practice.

"(11) The court erred as a matter of law and/or abused its discretion in finding/concluding that the use of the East Norriton Middle School stairs for field hockey practice constituted a defect of the real property in the care, custody and control of the school facility.

"(12) The court erred as a matter of law and/or abused its discretion in finding/concluding that the use of the stairs for tag relay races by the field hockey team during their practice session was not a use of the premises that was a reasonably foreseeable use which would cause injury to the plaintiff (or others).

"(13) The court erred as a matter of law and/or abused its discretion in finding/concluding that the plaintiffs failed to establish a cause of action under the common law under the facts and circumstances premised on Restatement of Torts §323 rendering a possessor of land liable for physical harm to an invitee by the condition of the land when one knows, or by the reasonable exercise of care would discover that running on the stairs involves an unreasonable risk of harm, and that the minor plaintiff would not discover or realize the danger, and would

not protect herself against it, or reasonably fail to exercise reasonable care.

"(14) The court erred as a matter of law and/or abused its discretion in finding/concluding that the Norristown Area School District by and through its employee/coach was not negligent with respect to the care, custody or control of real property under the factual circumstances presented.

"(15) The court erred as a matter of law and/or abused its discretion in finding/concluding that the use and condition of the stairs for tag relay races did not create a dangerous condition which caused the plaintiff's injury.

"(16) The court erred as a matter of law and/or abused its discretion in failing to submit to the jury for consideration the question of whether the Restatement of Torts §323 imposed a duty on the Norristown Area School District and coach Meissner to protect the plaintiff from injury and not to expose her (and others) to an obvious hazard of running relay tag races on the stairs.

"(17) The court erred as a matter of law and/or abused its discretion in failing to submit to the jury the question of whether the Norristown Area School District and coach Meissner as its employee had a duty to make the premises safe for field hockey team activities conducted on the premises, and whether requiring them as students to run tag relay races on the stairs breached that duty.

"(18) The court erred as a matter of law and/or abused its discretion in finding/concluding that relay tag races on the stairs as a field hockey practice activity was a safe activity consistent with the school district duty to protect students entrusted to their care.

"(19) The court erred as a matter of law and/or abused its discretion in finding/concluding that the conduct of

coach Meissner as a Norristown Area School District employee requiring the field hockey team to run relay tag races on the stairs did not create a dangerous condition which gave rise to the plaintiff's injuries.

"(20) The court erred as a matter of law and/or abused its discretion in failing and refusing to find that the Political Subdivision Tort Claims Act real property exception renders the school district and/or its employees legally liable for acts/conduct which causes the stairs to be unsafe for activities for which the stairs might reasonably be foreseen to be used.

"(21) The court erred as a matter of law and/or abused its discretion in finding/concluding that the running of tag relay races on the stairs was no different from the usual and ordinary risk associated with the running of tag relay races in the gym or on the hockey field for the conditioning of field hockey team members.

"(22) The court erred as a matter of law and/or abused its discretion in failing and refusing to submit to the jury the question of whether the use of the stairs for tag relay races created a dangerous condition, and that the condition created the reasonably foreseeable risk that a runner would fall and sustain injury.

"(23) The court erred as a matter of law and/or abused its discretion in finding/concluding that the issue of whether the running of tag relay races on stairs in a school facility created a dangerous condition was a matter which required expert testimony because their knowledge and ken of ordinary life experience.

"(24) The court erred as a matter of law and/or abused its discretion in finding/concluding that the expert testimony of Norman Goldstein, a forensic safety engineer, that the running of tag races on the stairs was a danger-

ous condition did not present an issue of fact for determination by the jury.

"(25) The court erred as a matter of law and/or abused its discretion in finding/concluding that the expert testimony of Norman Goldstein, forensic safety engineer, that the steps were not designed for running and when used for running, are dangerous, did not present an issue of fact for jury determination.

"(26) The court erred as a matter of law and/or abused its discretion in failing and refusing to submit the question of whether running or tag races on the stairs constituted a dangerous condition of the real property to the jury, particularly in light of the testimony of Norman Goldstein, forensic safety engineer, and the testimony of defendant Meissner that as an educator, when he observed the students running up and down the stairs, that he instructed them not to run on the stairs during school hours.

"(27) The court erred as a matter of law and/or abused its discretion in its failure to submit to the jury for their consideration every factual assertion and in each inference on behalf of the plaintiffs in reaching a determination on liability and damages.

"(28) The court erred as a matter of law and/or abused its discretion in its failure to submit to the jury the record facts as sufficient evidence from which a jury could find the creation of a dangerous condition of the real property by the use made of the stairs.

"(29) The court erred as a matter of law and/or abused its discretion in finding/concluding that the 'Medical information, activities policies and statement of assumed risk' document signed by plaintiff's parents constituted a waiver or assumption of risk of injury by plaintiff.

"(30) The court erred as a matter of law and/or abused its discretion in admitting in evidence the 'Medical information, activities policies and statement of assumed risk' documents as capable of establishing as a matter of law the plaintiff's assumption of risk of or waiver of recourse as to the plaintiff's injury sustained as a result of relay tag races being run on the East Norriton Middle School building stairs at the direction of coach Meissner.

"(31) The court erred as a matter of law and/or abused its discretion in finding/concluding as a matter of law that the 'Medical information, activities policies and statement of assumed risk' documents constituted either an assumption of risk or waiver of risk as a matter of law.

"(32) The court erred as a matter of law and/or abused its discretion in finding/concluding that the plaintiff assumed the risk of injury sustained as a risk of field hockey practice sessions.

"(33) The court erred as a matter of law and/or abused its discretion in finding/concluding that the risk suffered by plaintiff was the kind of risk for which her parents contemplated in signing for her to participate as a member of the field hockey team.

"(34) The court erred as a matter of law and/or abused its discretion in finding/concluding that the record presented factual questions and issues upon which reasonable men would not or could not differ.

"(35) The court erred as a matter of law and/or abused its discretion in the grant of a nonsuit, which nonsuit failed to consider the various immunity statutes required to be interpreted in pari materia with one another.

"(36) The court erred as a matter of law and/or abused its discretion in finding/concluding that the plaintiff's

injuries were not redressable for the reason that the plaintiff's injuries did not derive or result from a condition or defect which was 'of' the stairs.

"(37) The court erred as a matter of law and/or abused its discretion in finding/concluding that there is no liability capable of being imposed upon the school district employee as a matter of law under the attendant facts and circumstances.

"(38) The court erred as a matter of law and/or abused its discretion in the failure and refusal to submit the matter to the jury on the basis of the record evidence for their consideration."

Contrary to the constricts of Pa.R.A.P. 1925(b), requiring that an appellant provide a *concise* statement to the court, the plaintiffs have alleged in somewhat less than succinct manner, the aforementioned *38* counts of error. Rather than addressing each grievance specifically, this court will instead focus upon the logic utilized in its decision in granting the defendants' motion for a compulsory nonsuit in order to better clarify this appeal for review and disposition by the Commonwealth Court.

## DISCUSSION

Initially, this court notes that the standard for reviewing a trial court's decision to grant a compulsory nonsuit is well-established. A trial court may grant a compulsory nonsuit when, "viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, and resolving all conflicts in [her] favor, a jury could not reasonably conclude that the elements of the cause of action have been established." *Boyer v. City of Philadelphia,* 692 A.2d 259, 262 (Pa. Commw. 1997) (citing *Iandiorio v. Kriss & Senko En-*

*terprises Inc.,* 512 Pa. 392, 517 A.2d 530 (1986); *Talarico v. Bonham,* 168 Pa. Commw. 467, 650 A.2d 1192 (1994)). The facts and circumstances must lead the trial court to the conclusion that no liability exists. *Berman v. SEPTA,* 698 A.2d 1362, 1363 (Pa. Commw. 1997) (citing *Harvilla v. Delcamp,* 521 Pa. 21, 25, 555 A.2d 763, 764 (1989)). In this case, after giving the plaintiffs the benefit of all favorable testimony and every inference of fact arising therefrom, this court, nonetheless, concluded that, as a matter of law, the plaintiffs had failed to establish a cause or action under either the real property or any other exception to the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq. Accordingly, since the East Norriton Middle School, being a part of the Norristown Area School District, and its employee, coach Meissner, are each afforded immunity under the PSTCA (see part I, *infra*), the court was compelled to grant the compulsory nonsuit in favor of each of the defendants and against the plaintiffs herein.

I. *The Trial Court Correctly Granted the Nonsuit Against the Plaintiffs, Since the Plaintiffs Failed To Sustain a Cause of Action Under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq.*

School districts, such as the Norristown Area School District, are sheltered from prosecution under the Pennsylvania Political Subdivision Tort Claims Act which states:

"Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other

person." 42 Pa.C.S. §8541; *Dunaway v. Southeastern School District,* 676 A.2d 1281 (Pa. Commw. 1996), *alloc. denied,* 547 Pa. 719, 688 A.2d 173 (1997).

Coach Meissner, as an employee of the Norristown Area School District, is also shielded from liability under the PSTCA since:

"An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa.C.S. §8545.

It, therefore, was incumbent upon Littissia Wilson to provide evidence sufficient to place her claim within one of the exceptions to governmental immunity articulated in the PSTCA. See part II, *infra.* Because Ms. Wilson failed to demonstrate at trial that her claim fell squarely within one of the recognized exceptions to the PSTCA, this court did not abuse its discretion in granting the nonsuit in favor of the defendants whose immunity from suit is otherwise guaranteed. As such, the court properly denied the plaintiff's motion for a new trial.

II. *The Trial Court Correctly Held That the Plaintiffs Had Failed To State a Cause of Action Under the Real Estate Exception to the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq., Since the Plaintiffs Were Unable To Demonstrate That the Minor Plaintiff's Injuries Were Sustained Due to the Defendants' Negligent Care, Custody or Control of Real Property*

As first discussed in part I, *supra,* the plaintiffs have the burden of demonstrating that their action falls within

one of the eight named exceptions of the PSTCA. The specific subsection of that Act which is applicable to this lawsuit is the real property exception. The relevant sections of the PSTCA, referencing the liability exception and the subsection relating to real property, provide as follows:

"(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

"(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity), and

"(2) The injury was caused by the negligent acts of the local agency or an employee therof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

"(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . .

"(3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of

the local agency . . . ." 42 Pa.C.S. §8542(a)-(b)(3). (emphasis omitted)

## A. The Plaintiffs Have Failed To Satisfy the Requirement of Section 8542(a)(1) That the Action Be One in Which the Damages Sustained Would Be Recoverable Under Common Law or Statute

Pursuant to section 8542, the plaintiffs must establish that they possess a cause of action against a local agency. It is the plaintiffs' contention that they have successfully asserted a cause of action under the Restatement (Second) of Torts §323.[1] The plaintiffs appear to maintain

---

1. Section 323 of the Restatement (Second) of Torts provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increased the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." *Shannon v. McNulty,* 718 A.2d 828, 836 n.5 (Pa. Super. 1998).

It is the belief of this court that it was the intention of the plaintiffs to utilize another section of the Restatement, namely section 343, since the plaintiffs' references to Ms. Wilson, as a business invitee who must be afforded protection by a possessor of land, are more akin to the description of the class of individuals included within the latter provision.

Section 343 of the Restatement (Second) of Torts (1965) states:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger." *Gump by Gump v. Chartiers-Houston School District,* 125 Pa. Commw. 596, 601 n.6, 558 A.2d 589, 591 n.6 (1989).

that Ms. Wilson was a business invitee to be included under the purview of section 343 because of her status as a student at East Norriton Middle School and a member of the field hockey team.[2] The Commonwealth Court, in similar but clearly distinguishable circumstances, considered whether a high school athlete's injuries would fall under the ambit of section 343 for purposes of analysis under the PSTCA's section 8542.

In *Gump by Gump v. Chartiers-Houston School District,* 125 Pa. Commw. 596, 558 A.2d 589 (1989), *alloc. denied,* 523 Pa. 644, 565 A.2d 1168 (1989), a high school wrestler, Todd Alexander Gump, failed to negotiate a turn during a sprinting drill in a school hallway and, while turning a corner, unintentionally pushed his hand through a window pane in a hallway door which caused him to suffer multiple lacerations of his hand and arm. The court held:

"Appellants assert that appellee should have realized that the hallway window created an unreasonable risk of harm given the regular and permitted use of the hallway as a runway during wrestling practice; that appellee should have expected that Todd would not discover or realize the danger or would fail to protect himself against the danger; and that appellee did nothing to protect Todd

---

2. The Restatement (Second) of Torts (1965) section 332 defines invitee as follows:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Gump, supra* at 601, 558 A.2d at 591.

against the danger. Appellants have alleged facts that satisfy each element of section 343 of the Restatement (Second) of Torts (1965)." *Id.* at 602, 558 A.2d at 591.

In contrast to the factual circumstances in *Gump,* there was no "regular and permitted use" of the hallway and/or stairs in the East Norriton Middle School as a runway for the field hockey team. Contrary, to Count 7 [3] and Count 11 [4] of the plaintiffs' complaint which allege that indoor conditioning, such as the relay tag race involving the stairs and hallway, was a regular and permitted use of the real property, both Ms. Wilson and fellow field hockey team member and witness to Ms. Wilson's fall, Latisha Bazemore, testified that this was the first time coach Meissner had ever led the field hockey team in such an indoor tag relay race. (N.T., 10/14/98, p. 83, ll. 13-16; p. 101, ll. 14-15.) [5]

Section 343 also refers specifically to a "condition on the land." (See footnote 1, *supra.*)

---

3. Count 7 of the plaintiffs' complaint states: "7. The defendant School District permitted and regularly engaged in the use of the hallways for conditioning purposes for sports activities."

4. Count 10 states:

"10. The use of the stairs for lacrosse practice tag relay activities was an unsafe condition which should have been known to the District and [i]ts agents, servants and/or employees to create an unreasonable risk of harm given the regular and permitted use of the halls and stairways for lacrosse practice tag relays and other practice activities."

The court is cognizant of the fact that the complaint alleges that plaintiff's injuries occurred during a lacrosse practice. In fact, Ms. Wilson's injuries were sustained during a field hockey practice. (N.T., 10/14/98, p. 44, l. 25 to p. 45, l. 3.)

5. In fact, coach Meissner testified to the effect that he coached a tag relay race while in the school hallways and stairs on only one other occasion, during the year prior to the date of Ms. Wilson's accident. (N.T., 10/15/98, p. 5, ll. 18-25.)

In the case at bar, no such "condition" was alleged. Unlike the situation in *Gump,* where the plaintiffs asserted that a defect in the hallway door caused Mr. Gump's injuries and that said defect could have been cured by "the installation of safety glass or other types of protective devices" (*id.* at 590), plaintiffs' expert, Norman Goldstein, an engineer whose area of expertise was in forensic safety, failed to provide any evidence or testimony relative to a condition of the school property which might otherwise have contributed to Ms. Wilson's fall and her resultant injuries.

In fact, the following dialogue between counsel for the defendants, Mr. John Donahue, and Mr. Goldstein, illustrates that there was, indeed, no defect at all on the stairs:

"Q. Mr. Goldstein, in your years as an engineer that you related to the jury, since 1951, you've seen a lot of steps in your day?

"A. Yes, sir.

"Q. You've been doing this work a long time. Would you agree with me that these steps that you've seen pictures of, and inspected personally the day I was with you with Mr. Rogers,[6] these steps are as good as they get, aren't they?

"A. They're good steps, just not for running.

"Q. They're well constructed?

"A. No argument.

"Q. Brightly lit?

---

6. Mr. Richard W. Rogers was counsel for the plaintiffs in this action.

"A. No argument about any of that.

"Q. Diamond plate with grits?

"A. Diamond plate with grits.

"Q. You don't always see that, do you?

"A. No. On the other hand, the diamond plate does not wrap around the nosing, so, when you say they're as good as they get, they could have been a little bit better, but they are not bad steps by any means.

"Q. And the stairs, in and of themselves, are not dangerous?

"A. That is correct, when used in a normal manner.

"Q. And no defects in these steps, in and of themselves, as constructed, according to the building code?

"A. That is correct." (N.T., 10/15/98, p. 41, 1. 11 to p. 42, 1. 15).

Therefore, the court concludes that the plaintiffs have not met this first of the two requirements enunciated under section 8542, wherein liability shall only be imposed when the damages sustained would be recoverable under common law or a statute creating a cause of action if the injuries were not caused by a person not having immunity under section 8541. 42 Pa.C.S. §8542(a)(1). The plaintiffs have failed to demonstrate to this court that they would have been entitled to maintain a cause of action against the defendants under either common-law principles or under section 343[7] if the defen-

---

7. The Pennsylvania Supreme Court in *Kilgore v. City of Philadelphia,* 553 Pa. 22, 29, 717 A.2d 514, 517 (1998), see *infra* applying the first prong of the two requirements pronounced in section 8542(a)(1), opined that the plaintiffs could recover if Mr. Kilgore had fallen on private property. Instantly, that conclusion is not as tenable. There is a

dants did not have immunity under the PSTCA. Accordingly, the plaintiffs cannot satisfy this first prong of the test prescribed by the PSTCA. Nevertheless, the court will engage in an analysis in the second of the two requirements.

## B. The Plaintiffs Have Additionally Failed To Satisfy the Requirements Needed To Bring an Action Under the Real Property Exception to Government Immunity Under 42 Pa.C.S. §8542(a)(2) and (b)(3)

The Pennsylvania Supreme Court has instructed that the real property exception to the PSTCA should be narrowly construed, given the expressed legislative intent "to insulate political subdivisions from tort liability." *Mascaro v. Youth Study Center,* 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987) (citing *Casey v. Geiger,* 346 Pa. Super. 279, 499 A.2d 606 (1985), *alloc. denied,* 516 Pa. 638, 533 A.2d 710 (1987); *Vann v. Board of Education of the School District of Philadelphia,* 76 Pa. Commw. 604, 464 A.2d 684 (1983)). In 1997, the Pennsylvania Supreme Court decided the case of *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997) and held that the plain language of the PSTCA referring to the "care, custody or control of real property" should be applied to the factual situation presented to the court. *Eger v. Lynch,* 714 A.2d 1149, 1152 (Pa. Commw. 1998), *alloc. denied,* 1999 Pa. LX 630 (1999).[8] In *Grieff,* as the defendant fire asso-

seemingly insufficient basis upon which to conclude that, had Ms. Wilson fallen down stairs located on private property, without any other catalyst such as snow or water which had caused her to slip, she would be entitled to recovery.

8. In *Eger v. Lynch,* 714 A.2d 1149 (Pa. Commw. 1998), *alloc. denied,* 1999 Pa. LX 630 (1999), William Lynch consumed an exces-

ciation chief, Robert Grieff, was using paint thinner to remove paint from the floor of the fire station kitchen, the liquid thinner flowed under the refrigerator and was ignited as the refrigerator began to run. *Grieff, supra* 548 Pa. at 14, 693 A.2d at 196. The fire traveled to where plaintiff, Marlene Reisinger, a visitor at the fire station, was standing, engulfing her in flames and causing her to sustain serious injuries. *Id.* The trial court denied the defendants' motion for summary judgment, holding that "the alleged negligent care of the fire station [fell] within the real property exception to immunity." *Id.* The Commonwealth Court reversed the decision of the trial court since the plaintiffs, Mr. and Mrs. Reisinger, did not assert that the real property itself was defective. *Id.* Differentiating the *Grieff* case from the previous cases wherein the real property exception did not apply because the government's property only facilitated injuries caused by third parties, the Pennsylvania Supreme Court held that the plaintiffs' claim fell squarely within the real property exception since it was the fire association's alleged negligent *care* of the real property which caused Ms.

---

sive amount of alcohol at a township fire hall fundraiser and, while driving home, was involved in an auto accident which killed his passenger, Susan L. Parkin a/k/a Susan L. Eger. *Id.* at 1153. The decedent's estate brought a wrongful death and survival action against Lynch and the fire association charging that the real property exception to governmental immunity under the PSTCA applied. *Id.* at 1152-53. Plaintiff's executor contended that the association was negligent in its control of its real property in that it permitted the illegal sale of alcohol on its premises. *Id.* The court resolved that "[t]he association is only the local agency whose property may have facilitated the injuries caused by Lynch. This is not a question of care, custody or control over the real property owned by the association as in *Grieff.*" *Id.* at 1153.

Reisinger's injuries and, therefore, reinstated the trial court's order denying the motion for summary judgment. *Id.* 548 Pa. at 17, 693 A.2d at 197. (emphasis added)

In the case at bar, both parties concede that the factual circumstances surrounding Ms. Wilson's injuries present an issue of first impression for the court. (N.T., 2/16/99, p. 8, ll. 20-25.) The plaintiffs have asserted that their claim falls within that section of the PSTCA which provides for an exception to government immunity where the alleged negligence of the agency arises out of the control of real property. (N.T., 2/16/99, p. 4, ll. 10-15.)

This case, indeed, differs from the large majority of cases cited by the parties at trial and during post-trial proceedings, insofar as the authority relied upon involved consequences generally attributed to *conditions* of or on the real property in question. In *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998), the Supreme Court reversed the trial court's grant of the defendant city's motion for summary judgment, ruling that the plaintiffs, Mr. and Mrs. Kilgore's, claims placed them within the real estate exception to the PSTCA. *Id.* 553 Pa. at 29, 717 A.2d at 518. Walter Kilgore severely injured his foot, as he and a co-worker, Mark Newell, were attempting to hitch a cargo dolly to a motorized tug. *Id.* 553 Pa. at 24, 717 A.2d at 515. The injury occurred when Newell slipped on an accumulation of ice and snow which had fallen during a previous storm and lost control of the tug, causing Kilgore to be struck and injured. *Id.* The *Kilgore* decision, however, is still not applicable to the case at bar since Newell slipped on ice and snow which had not been cleared after an earlier storm. In this case, the stairs were free and clear of any debris.

In *Snyder v. North Allegheny School District,* 722 A.2d 239, 240 (Pa. Commw. 1998), plaintiff, Mary Ann Snyder, slipped and fell on ice and snow which had accumulated on a concrete landing at the top of a set of stairs in front of a school building. A jury returned a verdict in favor of the plaintiff, and, when the trial court denied the school district's post-trial motions, the case was appealed to the Commonwealth Court. *Id.* at 242. The Commonwealth Court relied on its previous decisions in *Hanna v. West Shore School District,* 717 A.2d 626 (Pa. Commw. 1998); *Eger, supra,* 714 A.2d 1149 (Pa. Commw. 1998); *Abella v. City of Philadelphia,* 703 A.2d 547 (Pa. Commw. 1997); and *Martin by Martin v. City of Philadelphia,* 696 A.2d 909 (Pa. Commw. 1997), in holding that the school district's negligence in failing to remove the ice and snow from the concrete landing placed the plaintiffs' claims squarely within the real property exception to the PSTCA. *Snyder, supra* at 246,

In *Hanna v. West Shore School District,* 717 A.2d 626 (Pa. Commw. 1998), Mr. and Mrs. Hanna were attending a parent-teacher conference at an elementary school when Mrs. Hanna slipped on a puddle of water located on the indoor corridor floor and sustained serious injuries. *Id.* at 627. The trial court entered summary judgment, rejecting the plaintiffs, Mr. and Mrs. Hanna's, argument that their claim fell within the purview of the real property exception since the alleged negligence occurred while an employee of the district was tending to real property. *Id.* That decision was affirmed by the Commonwealth Court but reversed and remanded by the Pennsylvania Supreme Court for "further consideration" in light of the court's decision in *Grieff v. Reisinger, supra. Hanna, supra* at 628. The Commonwealth Court, in its

subsequent analysis of *Grieff* opined that "Grieff's care of the fire association's property caused the fire that injured Reisinger," and, in acknowledging the similarity in facts between the two cases, reversed the trial court's order granting summary judgment and remanded the case for trial. *Id.* at 628-29 (quoting *Grieff, supra,* 548 Pa. at 16, 693 A.2d at 197.

In *Abella v. City of Philadelphia,* 703 A.2d 547 (Pa. Commw. 1997), Mary Ann Abella brought suit after she slipped and fell on hills and ridges of ice and snow while leaving a state office building. The Commonwealth Court considered whether the trial court erred in holding that the real property exception to PSTCA was inapplicable under the facts presented. *Id.* at 548. The trial court decision was affirmed by the Commonwealth Court, pursuant to the holding in *Finn v. City of Philadelphia,* 165 Pa. Commw. 255, 645 A.2d 320 (1994), *affirmed,* 541 Pa. 596, 664 A.2d 1342 (1995). However, *Finn* involved the sidewalk exception to the general immunity provisions of the PSTCA and is not applicable to the case at bar which did not involve in any way the care, custody or control of defendant school district's sidewalks. *Abella, supra* at 550.

In *Martin by and through Martin v. City of Philadelphia,* 696 A.2d 909 (Pa. Commw. 1997), a child was playing on a city football field when he dove to catch a football and landed on a metal pipe lying on the ground. *Id.* at 910. *Martin* cited *Grieff* which differentiated itself from *Mascaro* and its progeny in that a defect must cause and not merely facilitate injury in situations where third parties cause harm. *Id.* at 912. Reversing the order of the trial court granting summary judgment in favor of the City of Philadelphia, the Commonwealth Court held:

"Under *Grieff,* local agency liability for negligence in the care, custody or control of real property does not require the instrumentality causing harm to be 'of' the real estate in the sense of being affixed to it. The Martins must be offered the opportunity to prove their allegations that a goalpost was left concealed in an area intended for play by children, and the finder of fact will then determine whether the facts proved constitute a dangerous condition arising from the care, custody and control of the city's real property." *Id.* (footnote omitted)

The court is cognizant of the fact that, in this case, there was no such instrumentality which might be identified as being "of" or "on" the real property and to which the injuries suffered by Ms. Wilson might be attributed. Rather, the steps upon which the injured plaintiff fell were at all times held out to be in good and proper condition, a fact confirmed by plaintiffs' expert, Norman Goldstein, who testified: "I found nothing wrong with the steps." (N.T., 10/15/98, p. 36, ll. 6-7.)

In 1987, the Pennsylvania Supreme Court expounded upon the real estate exception to the PSTCA in the case of *Mascaro v. Youth Study Center,* 514 Pa. 351, 362, 523 A.2d 1118, 1124 (1987), opining:

"Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit."

This premise was reiterated in 1989 in *Snyder v. Harmon,* 522 Pa. 424, 434, 562 A.2d 307, 312 (1989) (citing *Cestari v. School District of Cheltenham Twp.,* 103 Pa. Commw. 274, 520 A.2d 110 (1987), *alloc. denied,* 517 Pa. 595, 535 A.2d 84 (1987)). Unlike *Gump,*

*supra,* in which the high school wrestling team regularly participated in running drills around the school hallways, and where there was a definite issue as to whether the glass through which the plaintiff, Todd Alexander Gump, inadvertently pushed his hand, was defective, in the case at bar, there was absolutely no testimony proffered by any witness, including plaintiffs' expert, Mr. Goldstein, that the stairs in any way contained a defect or condition which might have contributed to Ms. Wilson's fall during this activity which occurred during an activity which was rarely conducted by coach Meissner. To reiterate, plaintiffs' forensic safety expert, Mr. Goldstein, found absolutely nothing wrong with the stairs.

It is a well-established maxim that the failure to adequately supervise or negligent supervision does not fall under the ambit of the real property exception to the PSTCA. *Robson v. Penn Hills School District,* 63 Pa. Commw. 250, 437 A.2d 1273 (1981).[9] In *Farber v. Pennsbury School District,* 131 Pa. Commw. 642, 644, 571 A.2d 546, 547 (1990), an appeal from a trial court's grant in part and denial in part of the defendant school district's motion for judgment on the pleadings, a high

---

9. In *Robson,* a child was injured by a pencil which had been thrown by another student while both were sitting in an unsupervised classroom. *Id.* at 252, 437 A.2d at 1275. The court held:

"Our reading of the complaint leads us to the determination that the 'action or activity' complained of can be fairly characterized as the supervision of students. Therefore, we can only conclude that it would be a total distortion of the language of section 202(b)(3) to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property. Thus, we accept the view of the court below that 'a more commonsense approach is warranted here.' " *Id.* at 253-54, 437 A.2d at 1275-76. (footnote omitted)

school senior had charged his school district with negligence when he slipped or tripped and fell, sustaining an injury to his knee during a district-sponsored race in which he was carrying another student on his back. Citing *Mascaro* for the proposition that the real property exception is inapplicable as a basis of a claim of negligence grounded upon failure to supervise the conduct of students or persons adequately, the court held, "[i]t is clear that Faber's allegations of negligence in . . . the complaint deal with conduct of district employees in supervising the race and are not allegations of a defect or artificial condition of the land itself." *Id.* at 647, 571 A.2d at 549.

This viewpoint was echoed in *Musheno v. Lock Haven University of Pennsylvania,* 132 Pa. Commw. 643, 574 A.2d 129 (1990), in which a handicapped 18-year-old boy was found unconscious at the bottom of Lock Haven's pool and later died from the injuries he sustained. Affirming the trial court's grant of summary judgment, the Commonwealth Court held:

"The real estate exception to governmental immunity is a narrow exception and refers only to injuries arising out of the care, custody or control of the real estate in the possession of the political subdivision or its employees. . . . Furthermore, 'the real estate exception, . . . has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately' . . . 'The real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, these acts are outside the statute's scope of liability.' . . .

"In the instant case, the allegations do not contain statements as to artificial conditions or defects of the land itself. What is alleged here is a lack of a lifeguard which the trial court correctly found to be negligent supervision. Unfortunately, this egregiously negligent supervision is not a basis for a cause of action that would fit into the real estate exception." *Id.* at 647, 574 A.2d at 131. (citations omitted)

Based on the foregoing, this court may not infuse liability for negligent supervision on the part of coach Meissner which is couched as a claim based on the failure to control real property under the real property exception to the PSTCA.

In *Mooney by Mooney v. North Penn School District,* 90 Pa. Commw. 7, 493 A.2d 795 (1985), a case containing factual circumstances remarkably similar to the case at bar, the plaintiff/appellant, Kristen Mooney, took part in an educational exercise designed by her teacher to simulate the hostage crisis situation in Iran. *Id.* at 8, 493 A.2d at 796. While Ms. Mooney was blindfolded and being escorted around the school by another student, she fell down some steps and sustained injuries to her mouth. *Id.* The Commonwealth Court held: "The appellants contend that because the school district had exclusive control of the steps from which she fell the school district should be held liable under section 202(b)(3) of the Act, the real property exception to governmental immunity. We disagree." *Id.* at 8-9, 493 A.2d at 796. The court declared that the " 'action or activities' complained of was not, as the appellants allege in their brief, the unsafe condition of the school's steps, but rather the failure of the school district to supervise properly the activities of the students." *Id.* at 9, 493 A.2d at 797.

In *Fizzano v. Borough of Ridley Park,* 94 Pa. Commw. 179, 503 A.2d 57 (1986), *alloc. denied,* 514 Pa. 640, 523 A.2d 346 (1987), plaintiff, Christine Fizzano, was ice skating on a public lake when she was struck by a hockey puck and sustained injuries. Plaintiffs filed suit and alleged that Ms. Fizzano's injuries were the direct result of the defendant borough's "negligent failure to *control,* restrict, or prevent the dangerous conduct of third parties while on public property." *Id.* at 181, 503 A.2d at 58. (emphasis added) The plaintiffs alleged the fact that the borough permitted children to play hockey in the same vicinity as people ice skating amounted to negligent conduct relating to the care, custody and control of real property. *Id.* Affirming the trial court's grant of a motion for summary judgment, the Commonwealth Court held that "failure to supervise the activities of third parties is not the type of negligence which is covered by the real property exception to governmental immunity." *Id.* The court added, "[t]he conduct complained of *must* be directly related to the condition of the property." *Id.* at 182, 503 A.2d at 58.

Although the instant case was not one which involved the actions of a third party, the court similarly reached the logical conclusion that coach Meissner's conduct in instructing the field hockey team to run a tag relay race on the stairs ultimately concerned the issue of the propriety of Mr. Meissner's supervision and that Ms. Wilson's injuries were not "directly related to the condition of the property." *Fizzano, supra* at 182, 503 A.2d at 58. Had there been some actual defect of or on the stairs which caused Ms. Wilson to fall, perhaps this court may have reached a different result. However, there was no such defect. This fact was confirmed by the testimony of

plaintiffs' expert as well as Ms. Wilson herself. In short, the plaintiffs failed to demonstrate to the court how or why the factual circumstances of this particular claim could be attributed to anything other than coach Meissner's purported negligent supervision of the East Norriton Middle School field hockey team. Therefore, the court concluded as a matter of law, that it was abundantly clear, when viewing all of the evidence and in considering all reasonable inferences arising therefrom in the light most favorable to the plaintiffs, and resolving all conflicts in their favor, a jury could not reasonably conclude that the elements of a cause of action under the real property exception to governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S §8541 et seq., had been established. See *e.g., Boyer, supra* at 262.

## CONCLUSION

The factual circumstances presented to this court reflect nothing more than the possibility of negligent supervision on the part of coach Meissner. While there might be a case made for a more careful monitoring by defendant Meissner of his team's relay race drills being run in the defendant school district's building, the activity was not one which was performed with any degree of frequency, nor does the complained of activity fall within the ambit of uses which might be determined as either foreseeable or intended by the school district to occur upon the premises in question. While the court is not unsympathetic toward Ms. Wilson and the injuries she sustained as a result of her fall, the court is not here at liberty to fashion a remedy for which there exists no legal basis or authority. Rather, the court is obligated to

adhere to the plethora of appellate decisions whose consistent interpretation of the PSTCA and the real property exception to the clearly established immunity of governmental agencies have not yet embraced the concept of liability based solely upon the alleged negligent conduct of such an entity or one of its employees.

For all of the foregoing reasons, this court finds that the arguments proffered by the plaintiffs are without merit, and this court's order of February 26, 1999, denying the plaintiffs' motion for post-trial relief, should be affirmed.